(*Criminal Court of Cook County.*)

## People of the State of Illinois

### vs.

### Archer Carroll.

#### (1884.)

1. SENTENCE—SUSPENSION OF. There is no power in the court either under the statute or at common law to suspend the sentence of a prisoner found guilty by a jury.

2. SAME—COMMON LAW RULE—REPRIEVES. At common law the judges were empowered in capital cases to grant temporary reprieves but this power was only exercised in extreme cases.

3. SAME—REVIEW OF ACTION OF CIRCUIT JUDGE IN SUSPENDING SENTENCE BY ANOTHER CIRCUIT JUDGE. Where the trial judge suspends the sentence of a prisoner found guilty, this action is not subject to review by another circuit judge and the latter has no power to again sentence the prisoner.

Indictment for felony. Larceny. The facts are stated in the opinion.

TULEY, J.:—

The defendant Carroll was indicted for larceny in the year 1884. He was tried by a jury, found guilty and his term of imprisonment fixed at three years in the penitentiary. Sept. 30th, 1884, the then presiding judge of this court suspended the sentence and the prisoner was ordered discharged.

Motion is now made that the court now sentence the defendant to the penitentiary for the term of three years for the felony referred to. It is known that I differ with all, or nearly all of the judges who hold this court as to the power of a judge to suspend sentence upon a criminal who has been

tried by a jury, found guilty and had his term of imprisonment fixed by the verdict. In what I say I do not intend to criticise my brother judges. They are as conscientious as myself and their opinions entitled to as much credit.

Sec. 6 of division 14 of the criminal code requires that the jury shall in all cases "say in their verdict for what time the offender shall be confined" in the penitentiary and "the court in pronouncing sentence shall designate what portion of time the offender shall be confined to solitary imprisonment and what portion to hard labor."

I find no warrant in the statutes of this state for the exercise of the power to suspend the punishment fixed by the jury; no justification for a judge's failure to perform the duty enjoined upon him by the law. It is said, however, that the power exists by virtue of the common law. This I most emphatically deny. No case can be found where an English judge has ever suspended sentence for an indefinite period of time. Under a system of practice where the judge had no power to even grant a new trial in a case of felony, it would be strange indeed that the judges should undertake to say when the law should and when it should not be enforced. There was at common law what was known as the law of respite or reprieve, but even that appears to have been limited to capital cases. 1 Bishop, Crim. Law, sec. 1299. The same author says "the two terms are synonymous. Either signifies the suspension *for a time* of the execution of a sentence which has been pronounced."

"Every court which," says Hawkins, "has power to award execution may grant it of its own sentences." This latter sentence has been seized upon by some courts as holding that the court may suspend the execution of any sentence. It clearly has reference only to granting a respite or reprieve for a definite time in capital cases, as in no other was an "execution" of a sentence ever awarded. In all other cases the judges made only a memorandum upon the calendar or list of criminal cases as to the result, and the sheriff without any writ carried the sentence into execution.

These reprieves were granted only in extreme cases *ex*

*necessitate*, not depending upon the whim or caprice of the judge. An examination of the cases and of authors on criminal law will show they were granted where a woman condemned to death was found to be *enceinte*, where insanity had supervened and where there were extenuating circumstances in order to enable the prisoner to apply for a pardon.

"The judge should recommend the prisoner to a pardon and not suspend sentence in case he thinks no punishment should be inflicted." 1 Bishop, Crim. Law, sec. 675.

The law which allowed benefit of clergy and permitted approvers and accomplices to go unpunished has no bearing upon the point in question.

The reason why the judge has no such power is very clear to my mind. Says Archbold, p. 578: "A judgment though pronounced or awarded by the judges is not *their* determination and sentence, but the *sentence* and determination of the law which depends not upon the *arbitrary opinion* of the judge, but the settled and invariable principles of justice," and cites the form of the judgment which is not that "it is ordered" by the court, but that "it is considered, *consideratum est per curiam* which implies that the judgment is none of their own but the act of the law pronounced and declared by the court upon determination and inquiry."

In other words, the judge is not the law, but he is merely the instrument selected to pronounce the law of sentence and determination. Given the arbitrary power to say when the law shall and when it shall not be enforced, he has practically not only the judicial but the legislative and executive power combined in one person. It is judicial usurpation not only of the power of pardon, but also the power to say what shall be the law.

But it is claimed that the practice has prevailed in the United States, and I have been cited to a written opinion of the learned judge who suspended sentence in this case in which reference is made to the following American cases: *Commonwealth v. Dowdican's Bail*, 115 Mass. 133, 136; *State v. Addy*, 43 N. J. L. (14 Vroom.) 113; *Weaver v. People*, 33 Mich. 296; *People v. Morrisette*, 20 How. Pr. 118.

The Massachusetts decision was upon the question whether placing an indictment on file entitled the prisoner to a discharge. The point was not involved in the New Jersey case, nor was it directly in issue in the Michigan case. In *People v. Morrisette*, 20 Howard Pr. 118, the judge expressly held that no court in that state had the pardoning power. "That power is reserved exclusively to the governor."

I can see no good reason or cause for exercising any such power. If the verdict of the jury is not warranted by the evidence, the judge can grant a new trial. If the indictment is bad, the judgment can be arrested. As a matter of policy the practice should not be followed. A case which would appear to call for a suspension of the sentence would justify the granting of a new trial and the entering of a *nolle prosequi.*

The only opinion which recognizes the power as existing is the Michigan case, although, as before stated, that was not the question before the court. The Michigan case was in substance this: The judge suspended sentence until the next term of court and released the prisoner on a nominal recognizance. The second term thereafter another judge temporarily holding the court, sentenced the prisoner. The supreme court, on error, held: "The failure to sentence at the next term was practically the abandonment of the prosecution, and that the act of the last judge was not the supplying of the trial judge's omissions, but was practically overruling his decision."

That decision is in point here. One circuit judge has no power to overrule the decision of another circuit judge in the same case. Only a court of review can do so. The decision of the judge who tried this case, that this prisoner should be discharged and that the sentence of the law should not be pronounced against him, must stand until reversed by a higher court, however erroneous I may judge it to be. Even if the power to suspend sentence is admitted, the reasons for the suspension do not appear of record. I have no doubt the ex-judge acted conscientiously. I know of no writ authorized by law by which this defendant being once thus discharged

can be seized and brought before this court. Being illegally in custody and finding no power or authority to set aside or overrule the judge, who suspended the sentence, the defendant must be discharged.

I admit this matter of suspending sentence has of late years come into practice, in this and other states. Even justices of the peace exercise the power to suspend the law. It is in my opinion a dangerous practice.

If the judge who tried Ford and Murphy, lately executed at New Orleans, had arbitrarily suspended judgment and discharged the murderers, the public would have been aroused to the danger of having such power exercised by judges. If the power exists in one case, it exists in all. A Ford or a Murphy may yet have a sentence suspended.